**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------X
                                                                                            CHAPTER 7
In Re:

Clear Advantage Title, Inc.,                                                  Case No.: 07-28673 (MBK)


                                        Debtor.
----------------------------------------------------------X
Clear Advantage Title, Inc. and Edward Furfey,

                                        Plaintiffs,
- against-
                                                                                            Ad. Pro. No. 08-2473 (MBK)
Jeffrey Gibb and Holly Paxman, 1st Constitution Bank,


                                        Defendants.
----------------------------------------------------------X
APPEARANCES:

Bunce D. Atkinson, Esq.
Atkinson & DeBartolo, P.C.
The Galleria, 2 Bridge Avenue
Building Two, Third Floor
Red Bank, New Jersey 07701
Attorneys for Plaintiff, Clear Advantage Title, Inc.

Gregg S. Sodini, Esq.
Law Offices of Gregg S. Sodini, LLC
500 Harding Street
Freehold, New Jersey 07728
Attorneys for Defendant, 1st Constitution Bank

Herrick, Feinstein LLP
One Gateway Center
Newark, New Jersey 07102
Attorneys for Creditor, First American Title Insurance Company

**MICHAEL B. KAPLAN, U.S.B.J.**

1

**OPINION**

**I.     INTRODUCTION**

This matter comes before the Court by way of a Motion for Summary Judgment Dismissing the Complaint filed by Defendant, 1st Constitution Bank ("1st Constitution"), and a Cross Motion for Partial Summary Judgment On Counts Eight Through Eleven of the Complaint filed by Plaintiff, Bunce Atkinson, Chapter 7 Trustee ("Trustee") for Clear Advantage Title, Inc. ("Clear Advantage") (collectively, "the Parties"). The Trustee filed additional pleadings in response to the Cross Motion.[1] The Defendant requests this Court dismiss Plaintiff's breach of contract, negligence, recklessness, and New Jersey Consumer Fraud Act claims. The principal issues before the Court are: (1) whether 1st Constitution exercised good faith in executing its obligations owing to Clear Advantage; (2) whether the Uniform Commercial Code preempts Plaintiff's common law claims; (3) whether 1st Constitution violated the New Jersey Consumer Fraud Act; and, (4) whether Plaintiff's recovery on the checks is barred under N.J.S.A. 12A:4-406.

For the reasons set forth below, the Court finds Plaintiff's breach of contract, negligence, and recklessness claims implicate issues of good faith and fair dealing and are not displaced by the Uniform Commercial Code. However, these claims cannot be decided without resolving disputed material facts. Thus, the Parties failed to meet their respective burdens of showing no genuine issues of material fact exist, and summary judgment is denied. However, the Court finds that Defendant did not violate the New Jersey Consumer Fraud Act ("CFA") because it did not engage in "sharp practices," or such other conduct violative of the CFA. Accordingly, Defendant's motion for summary judgment is granted on Count Eleven. Lastly, unless Plaintiff

---

[1] First American Title Insurance Company, a non-party creditor, submitted a Memorandum of Law in Opposition to 1st Constitution's Motion for Summary Judgment and in Support of the Cross-Motion for Partial Summary Judgment Filed by the Trustee.

can prove that the bank did not honor any of the checks paid to Gibb in good faith, relief under N.J.S.A. 12A:4-406 will be limited to recovery on checks, bearing an unauthorized or forged signature, which were included in bank statements sent to Clear Advantage within one year of proper notice to 1st Constitution.

## II. PROCEDURAL HISTORY/FACTS

On November 14, 2006, Clear Advantage instituted this action against Defendants Gibb and Paxman in the Superior Court of New Jersey, Mercer County, Dkt. No. MER-L-069007. Clear Advantage is a title agency licensed by the State of New Jersey, which necessitated maintenance of a trust account. Mr. Jeffrey Gibb was a staff attorney and title examiner for Clear Advantage, beginning, on or about, February 28, 2003. At all times relevant hereto, Clear Advantage maintained the accounts in issue with 1st Constitution and Clear Advantage's principal officer and sole shareholder was Edward Furfey.

On January 10, 2007, Clear Advantage filed the Complaint and First Amended Complaint, alleging that, beginning around April 2003, Gibb embezzled a significant amount of money from Clear Advantage. Specifically, Gibb is alleged to have presented to 1st Constitution a series of Clear Advantage Trust Account Checks payable to 1st Constitution and requested that the bank provide him with treasurer checks payable to various persons or entities. Gibb is alleged to have had such treasurer checks made payable to himself, cash, Clear Advantage, and personal creditors – i.e. a jewelry store and his children's private school. The total amount paid from the unauthorized withdrawal of funds by treasurer checks, based upon the checks the Trustee has obtained as of August 16, 2010, total $427.743.81.[2] According to Clear Advantage, none of the checks were authorized by Clear Advantage or Edward Furfey, and all bear forged

---

[2] As of the date of Plaintiff's filing in the instant matter, 1st Constitution honored and paid more than $1.12 million of Clear Advantage Trust Account checks bearing forged maker signatures. However, the Trustee has yet to verify whether 1st Constitution delivered bank checks to Gibb outside of the $427,743.81 figure.

maker signatures. Gibb's wife, Paxman, is listed in the complaint as being a beneficiary of funds allegedly embezzled by Gibb. See Atkinson Cert., Ex. A, B.

On August 16, 2007, Clear Advantage filed the Second Amended Complaint, adding 1st Constitution as an additional defendant and asserted four claims against the bank: (1) breach of contract (Count Eight); (2) negligence (Count Nine); (3) recklessness (Count 10); and, (4) violations of the New Jersey Consumer Fraud Act (Count Eleven). 1st Constitution was served with the Second Amended Complaint on August 21, 2007.

There is no dispute that the checks at issue were drawn on either one of two Clear Advantage accounts at 1st Constitution, Account No. 9760022864 (the "2864 Account") and Account No. 1501996612 (the "6612 Account") (collectively the "Accounts"). The checks were drawn on the 6612 Account from March 2003 through April 2006 and were drawn on the 2864 Account from April 2005 through September 2006. Upon opening of the Accounts, 1st Constitution required that Clear Advantage execute Depositary Agreements. The Depositary Agreements contained a section entitled WITHDRAWALS. It provided, *inter alia*, that "Unless otherwise clearly indicated on the account records, anyone of you who signs this form, including authorized signers, may withdraw or transfer all or part of the account balance at any time on forms approved by us." See Mangano Cert., Ex. B. The only parties authorized to sign on either account were Edward Furfey, David G. Pierce, Christpoher Lacroce and Joan C. Herrara. Jeff Gibb was never an authorized signature on either Trust Account. Id.

Additionally, 1st Constitution required that Clear Advantage provide Corporate Authorization Resolutions to 1st Constitution, on a form prepared by the bank, listing those persons with authority to withdraw or transfer funds on deposit with 1st Constitution. Jeff Gibb was not listed on the Corporate Authorization Resolutions as a person entitled to withdraw funds

from the Accounts.

Each month, from the inception of the Accounts until the Accounts were closed, 1st Constitution sent, and Clear Advantage admittedly received, account statements for each of the Accounts. The account statements included copies of all items paid for that month such that Clear Advantage would have received these statements and items no later than the tenth of each month. Additionally, in October 2006, Mr. Robert Mangano, President of 1st Constitution, alerted Edward Furfey of Gibb's conduct after he discovered suspicious activity on the Accounts. 1st Constitution alleges that it was never notified that any of the subject transactions was unauthorized.

Oral argument on the motions was held on September 13, 2010. At the conclusion of the hearing, the Court took the matter under advisement and reserved decision. After reviewing the parties' submissions and applicable law, the Court is prepared to rule.

### III.   JURISDICTION

The Court has jurisdiction over the underlying case under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court, dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). While the claims at issue are non-core proceedings (not arising under nor in Title 11), the Court determines that said claims are related to the Chapter 7 case pending before this Court; consequently, the Court exercises jurisdiction under 28 U.S.C. § 1334(b).

### IV.   DISCUSSION

**A. Summary Judgment Standard**

Fed. R. Civ. P.56(c) provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

5

affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Id. As the Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986). "In deciding a motion for summary judgment, the judge's function is to . . . determine if there is a genuine issue for trial." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp., supra, 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 105 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 301 (3d Cir. 1995).

### B. Count Eight: Breach of Contract

In Count Eight, Plaintiff alleges that 1st Constitution is in breach of the Depositary Agreements the Parties executed. As will be discussed below with respect to the common law claims of negligence and recklessness, the Parties dispute whether recovery on the checks under a breach of contract cause of action is displaced by the statutory scheme developed under the Uniform Commercial Code ("UCC"). Notwithstanding, undeniably, the relevant UCC

6

provisions, as adopted in New Jersey, implicate issues of good faith and fair dealing. See N.J.S.A. 12A:1-203 ("Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement"), 12A:1-201(19) (defining "good faith" as "honesty in fact in the conduct or transaction concerned"), and 12A:3-103(a)(4) (defining "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing.").[3] In that respect, questions of fact exist as to when 1st Constitution first became aware of the Gibb forgery scheme, whether it was complicit and whether it exercised ordinary care in permitting the processing and payment of the forged checks. Moreover, this Court agrees with Plaintiff and finds that good faith is an issue of fact which should be determined upon testimony at trial, not on summary judgment. Pl. Cross-Mot. At 24. Accordingly, both Defendant's motion for summary judgment and Plaintiff's cross-motion for partial summary judgment on Count Eight are denied.

### C. Counts Nine and Ten: Common Law Claims of Negligence and Recklessness

With respect to Counts Nine and Ten, Plaintiff alleges that 1st Constitution's conduct constitutes negligence and recklessness under the common law. In its motion for summary judgment, 1st Constitution contends that the UCC provides the sole remedies available against a financial institution, and therefore completely bars Clear Advantage's common law claims against 1st Constitution. Def.'s Bf. At 15. Plaintiff counters that common law claims are not preempted where, as here, a contractual relationship existed between the parties. Pl.'s Br. At 21. Thus, the issue is whether the Depositary Agreements which 1st Constitution required Clear Advantage to execute give rise to a "special relationship," such that Plaintiff may maintain its common law claims of negligence and recklessness against 1st Constitution.

---

[3] At oral argument, the Court noted that New Jersey has not adopted the revised version of UCC Article I and queried counsel as to the applicable standard for "good faith" – the subjective definition under N.J.S.A. 12A:1-201(19) or the broader objective definition found in N.J.S.A. 12A:3-103. As the applicable standard is irrelevant for purposes of resolving the instant summary judgment motion, the Court will await briefing on this issue by the Parties as part of pre and/or post trial submissions.

Generally, common law causes of action are prohibited in situations governed by the UCC. This is reflected in New Jersey state case law. The New Jersey Supreme Court states that in being "mindful of the balance of interests reflected in the Legislature's enactment of the Code's provisions . . . most courts have been reluctant to sanction common law negligence claims." City Check Cashing, Inc. v. Manufacturers Hanover Trust, 166, N.J. 49, 58 (citing Bank Polska Kasa Opieki, S.A. v. Pamrapo Sav. Bank, S.L.A., 909 F. Supp. 948, 956 (D.N.J. 1995)). Thus, "[o]nly in very rare instances should a court upset the legislative scheme of loss allocation and permit a common law cause of action." Id.

The New Jersey Appellate Division affirmed this holding in the context of UCC Articles 3 and 4, which govern the negotiation, processing, collection, and payment of negotiable instruments, stating that "[n]ecessarily then, the existence of such a comprehensive remedy to address plaintiff's claim of improper payment in the case precludes a common law negligence claim against either party." Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat'l Bank, 390 N.J. Super. 199, 205 (App. Div. 2007). "Indeed, the UCC displaces the common law where reliance on the common law would thwart the purposes of the UCC." Id. at 204.

However, the City Check Cashing Court recognized that preemption may not always apply:

> "It is fair to say, however, that implicit in those expressions of the need for restraint is a recognition that **a common law duty, in fact, may arise and that its breach may be actionable in spite of the existence of the [UCC]**. Girard Bank, supra, 474 F.Supp. at 1239; See also Penn. Nat'l Turf Club, supra, 158 N.J. Super. at 203, 385 A.2d 932 (stating that "although a bank has complied with the [UCC] provisions, such compliance does not necessarily immunize it from ordinary tort liability.")"

166 N.J., at 58-59 (*emphasis added*). Specifically, a common law duty can arise when a special relationship exists between the parties. "Courts have recognized tort liability of a financial institution where a special relationship has been established such as fiduciary, confidential,

8

*contractual*, or legal or where there was fraud or misrepresentation on part of defendant bank." City Check Cashing, 166 N.J. at 59-60 (citing Cumis Ins. Soc'y, Inc. v. Windsor Bank & Trust Co., 736 F.Supp. 1226, 1233 (D.Conn. 1990) (*emphasis added*)).

Therefore, whether or not Clear Advantage's common law claims are preempted hinge on whether a "special relationship" exists between Clear Advantage and 1st Constitution. The Court finds that such a "special relationship" exists and therefore will allow Clear Advantage to maintain its common law claims of negligence and recklessness. The pleadings provide that, upon opening of the accounts, 1st Constitution required Clear Advantage to execute Depositary Agreements. As aforementioned, the Depositary Agreements contained a section entitled WITHDRAWALS which provided, *inter alia*, that:

> "Unless otherwise clearly indicated on the account records, anyone of you who signs this form, including authorized signers, may withdraw or transfer all or part of the account balance at any time on forms approved by us."

The only parties authorized to sign on either account were Edward Furfey, David G. Pierce, Christpoher Lacroce and Joan C. Herrara. Jeff Gibb was never an authorized signature on either Trust Account. Nonetheless, 1st Constitution permitted Gibb to withdraw funds from the Accounts. This Court believes that this agreement reflects the very contractual undertaking the Courts had in mind when carving out this "special relationship" exception and that a duty arose requiring 1st Constitution to make further inquiry before permitting Gibb to withdraw funds from the Accounts.

However, the same Depositary Agreements imposed several responsibilities on Clear Advantage, namely, the duty to promptly review its statements and report any unauthorized activity to 1st Constitution.[4] The agreement provides, in pertinent part, that:

---

[4] This contractual provision narrows the twelve (12) month time period of repose set forth in N.J.S.A. 12A:4-406(f) by which a bank customer is obligated to review bank statements and give notice to the drawee bank of forgeries or

9

> "You . . . agree that if you fail to report any unauthorized signatures, alterations, forgeries or any other errors in your account within 60 days of when we make the statement available, you cannot assert a claim against us on any items in that statement, and the loss will be entirely yours. This 60 day limitation is without regard to whether we exercised ordinary care."[5]

Clear Advantage did not report the unauthorized signatures in the appropriate timeframe. Indeed, it appears that after three years, it was 1st Constitution which first may have brought the concerns to its customer's attention. Therefore, the Court will permit Clear Advantage to maintain its common law claims against 1st Constitution, but admonishes Plaintiff that any relief it may ultimately obtain will likely be reduced as a result of its comparative negligence. Defendant's motion for summary judgment on Counts Nine and Ten is denied.

### D. Count Eleven: New Jersey Consumer Fraud Act

At Count Eleven, Plaintiff alleges that the conduct of 1st Constitution constitutes a violation of the New Jersey Consumer Fraud Act (the "CFA"). N.J.S.A. 56:8-2 et. seq., prohibits:

> "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing [ ] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been mislead, [sic] deceived or damaged thereby . . . "

N.J.S.A. 56:8-2. A party who suffers an "ascertainable loss" from a violation of the CFA may recover treble damages, costs, and attorney's fees. Id.; United States Land Resources, LP v. JDI Realty LLC, 2009 WL 2488316 (D.N.J. 2009).

The CFA was enacted to "protect the consumer against imposition and loss as a result of

---

other discrepancies. The Court notes that its analysis of Plaintiff's common law negligence claim does not affect the rights and remedies of the parties under N.J.S.A. 12A:4-406, discussed below, including the validity of this narrowing provision.

[5] Dkt. ¶ 26. See Mangano Cert., Ex. C.

10

fraud and fraudulent practices by persons engaged in the sale of goods and services." Scibek v. Longette, 339 N.J. Super. 72, 77 (App. Div. 2001).  The purpose of the CFA is to "eliminate sharp practices and dealings in the marketing of merchandise and real estate." Lee v. First Union Nat'l Bank, 199 N.J. 251, 971 971 A.2d 1054 (2009) (quoting Channel Cos. v. Britton, 167 N.J. Super. 417, 418, 400 A.2d 1221 (App.Div. 1979)); See also United States Land Resources, supra, at *16.  The New Jersey Supreme Court has additionally clarified that the CFA is:

> "aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate . . . The legislative concern was over sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices."

Directv, Inc. v. Marino, 2005 WL 1367232 *3 (D.N.J. 2005) (citing Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 390 A.2d 566, 568-69 (N.J. 1978)).

Courts have held that, in order to advance the purposes of the CFA, "the Act is to be liberally construed." Lee, 199 N.J. at 257, 971 A.2d 1054; Lettenmaier v. Lube Connection, Inc. 162 N.J. 134, 139, 741 A.2d 591 (1999) ("[The CFA is] to be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes.").  However, the New Jersey Supreme Court has noted that the CFA's application is not without limit: "[The Courts] need to place reasonable limits upon the operation of the CFA despite broad statutory language, so that its enforcement properly reflects legislative intent, however ascertained." Lee, supra, at *16; Arc Networks, Inc. v. Gold Phone Card Co., Inc., 333 N.J. Super. 587, 590, 756 A.2d 636 (2000) ("[The CFA] is not intended to cover every transaction that occurs in the marketplace. Its applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself.").

The Court finds that 1st Constitution has committed none of the enumerated acts listed

within N.J.S.A. 56:8-2 for which Plaintiff seeks to hold the bank responsible.  There is no evidence to suggest that 1st Constitution "misrepresent[ed], conceal[ed], or omit[ed] . . . any material fact" in its dealings with Clear Advantage.  Instead, 1st Constitution provided account statements to Clear Advantage on a regular basis.  In fact, Defendant's submissions posit that it was 1st Constitution that explained the basis of the problem – i.e. Gibb's suspicious activities – to Clear Advantage in October 2006.  See Papier Cert., Ex. 1 at 9, Ex.3 at 72-73, 75-77, 161-62.  This is in sharp contrast to the case law in which a financial institution willfully disregarded warning signs that suspicious activity was afoot.  Compare  Wilson v. Harris N.A., 2007 WL 2608521 *8 (N.D. Ill.) (finding defendant bank breached its duty to customer when customer notified bank of unauthorized withdrawal and bank failed to investigate for over six months, "despite the availability of evidence that strongly suggest[ed] the transactions were unauthorized.").  Additionally, Clear Advantage never objected to the payment regarding any of the checks until 1st Constitution alerted it to Gibb's suspicious activities.  See Mangano Cert., ¶ 9.  Therefore, even drawing all favorable inferences in Plaintiff's favor, this Court finds that Defendant did not engage in any sharp practices whereby Plaintiff was deceived or defrauded.

Even assuming *arguendo* that 1st Constitution violated the CFA, in the absence of a consumer transaction between the parties, a claim under the CFA cannot stand.  In City Check Cashing v. National State Bank, the court defined a consumer as "one who uses (economic) goods, and so diminishes or destroys their utilities."  244 N.J. Super. 304, 309 (1990) (citing Hundred East Credit Corp. v. Eric Schuster, supra, at 355, 515 A.2d 246).  In that case, the plaintiff, a check cashing service, attempted to assert a consumer fraud claim against a bank that froze its account in violation of an alleged oral agreement.  The court held that the plaintiff was not a consumer under the CFA because "plaintiff did not diminish or destroy the utility of the

cash and therefore did not consume it." Id. Plaintiff's use of account services did not transform the depositor into a "consumer" for purposes of the CFA. Id. In the same vain, Clear Advantage's use of 1st Constitution's account services does not transform it into a "consumer" under the CFA.

In sum, Plaintiff has, at best, alleged that Defendant and its employees were negligent in permitting Mr. Gibb to withdraw funds from the Accounts. This does not rise to the level of "sharp practices," or other unconscionable conduct. Moreover, this type of transaction is not the type of "consumer transaction" the New Jersey legislature intended to fall within the purview of the CFA. Therefore, this Court will enter summary judgment in favor of Defendant on Count Eleven. Inasmuch as the Court finds, as a matter of law and fact, that Clear Advantage cannot prove a violation of the CFA, the Court will not address whether the UCC preempts application of the CFA in this instance.

### E. Relief Available under N.J.S.A. 12A:4-406

At this juncture, the Court determines that Plaintiff's relief under N.J.S.A. 12A:4-406 is limited because it failed to promptly notify 1st Constitution of the unauthorized signatures within the appropriate timeframe.[6] N.J.S.A. 12A:4-406(f) provides, in pertinent part, that:

> "**Without regard to care or lack or care** of either the customer or the bank, a customer who does not **within one year** after the statement or items are made available to the customer (subsection a. of this section) discover and report the

---

[6] However, if Plaintiff can establish at trial that 1st Constitution received notice of the unauthorized signatures within one year from when the relevant account statements were made available, the Court will revisit 12A:4-406. In so doing, the Court intends to apply the one year period of repose set out in the statute. The Court believes the "60 day" timeframe provided in the agreement is "manifestly unreasonable," for purposes of N.J.S.A. 12A:4-103(a), because: (1) the agreement reduces the statutory period by too great a percentage; (2) the bank did not obtain a knowing and voluntary waiver from the Plaintiff; and, (3) the Plaintiff did not receive any benefit as a result of the shortening provision. See Lor-Mar/Toto, Inc. v. 1st Constitution Bank, 376 N.J.Super. 520, 871 A.2d 110, 118-19 (2005). Indeed, even the UCC drafters believed any shortening period less than 90 days was unreasonable. See U.C.C. 4-406(g) (March 2001 Draft) (stating that "any agreement that shortens [the one-year] period to a time less than three months shall be deemed to be an agreement to shorten that period to three months"); See Paul S. Turner, Contracting Out of the UCC: Variation by Agreement Under Articles 3, 4, and 4A, 40 Loy. L.A. Rev. 443, 458 (2007).

> customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration."

N.J.S.A. 12A:4-406(f) (*emphasis added*). It is undisputed that 1st Constitution failed to receive any notice of the unauthorized signatures for well over three years after the statements were first made available to Clear Advantage.[7] This directly contravenes the requirements under applicable law. Accordingly, Plaintiff's failure to properly notify the bank of the unauthorized signatures precludes it from asserting the forgery against the bank, regardless of whether 1st Constitution exercised ordinary care in paying the treasurer checks.

However, a question of fact exists as to whether 1st Constitution exercised its duties in good faith. N.J.S.A. 12A:4-406(e) provides that a customer is not precluded from asserting a claim against the bank if the customer proves that the bank did not pay the item in good faith. Accordingly, relief under 12A:4-406 will be available to the Plaintiff to the extent the Plaintiff can prove 1st Constitution did not pay the checks to Gibb in good faith, or to the extent it can establish that the requisite notice was given pursuant to the statute.

### V.     CONCLUSION

For the foregoing reasons, this Court finds: (1) A question of fact exists regarding whether the Parties executed their duties in good faith; (2) Clear Advantage may maintain its common law negligence and recklessness claims against 1st Constitution because a "special relationship" exists between the Parties; (3) 1st Constitution, as both a matter of law and fact, did not engage in "sharp practices" or other unconscionable conduct, and has not violated the New Jersey Consumer Fraud Act; and, (4) Unless Plaintiff can prove that the bank did not honor any of the checks paid to Gibb in good faith, relief under N.J.S.A. 12A:4-406 will be limited to

---

[7] The Complaint and First Amended Complaint filed by Clear Advantage allege that Gibb began embezzling money from Clear Advantage around April 2003.

14

recovery on checks bearing an unauthorized or forged signature which were included in bank statements sent to Clear Advantage within one year of notice to 1st Constitution.

Accordingly, the Court denies the Defendant's motion for summary judgment on Counts Eight through Ten and denies the cross-motions filed by Plaintiff. The Court grants the Defendant's motion for summary judgment with respect to Count Eleven. Defendant is directed to submit a form of order.

Dated: October 15, 2010

/s/ Michael B. Kaplan
Honorable Michael B. Kaplan
United States Bankruptcy Judge